IN the MATTER OF K. H., alleged child in need of supervision: K. H., Appellant-Petitioner,

v.

BAYFIELD COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent.

Supreme Court

*No. 78–528. Argued September 2, 1980.—
Decided September 30, 1980.*

(Also reported in 296 N.W.2d 746.)

For the appellant-petitioner there was a brief and oral argument by *Thomas R. Casper*, Norlin Law Office, of Washburn.

For the respondent there was a brief and oral argument by *William Bussey*, district attorney of Bayfield county.

DAY, J.   This is an appeal from an unpublished decision of the Court of Appeals affirming in part, vacating and remanding in part, and dismissing in part, orders of the Circuit Court for Bayfield County providing for the transfer of custody of a child for school truancy. We conclude, because the trial court orders entered in this case have expired or been vacated and because the child has attained an age where he would not be subject to compulsory school attendance in Bayfield County, that this case is moot. We therefore dismiss the appeal.

On January 16, 1978, a petition for determination of the status of K. H., then fourteen years of age, was brought by the Bayfield County Department of Social Services (the department) in the Circuit Court for Bayfield county. The petition alleged that K. H. was habitually truant[1] from school and sought a determination of

---

[1] "Truancy" is defined by sec. 118.16(1), Stats. 1977, to mean:
"118.16.   **Truancy.**   (1) . . . any absence of one or more days from school during which the principal or teacher has not been notified in writing of the legal cause of such absence by the parent or guardian of the absent pupil, . . . The only legal causes for absence are those specified in s. 118.15(3) and (4)."

The legal causes for absence relevant here are set forth in sec. 118.15(3)(a)2 and 3, Stats. 1977, which exempt from the compulsory school attendances:

a need for supervision under sec. 48.12(2)(a), Stats. 1975.[2]

During the next six months seven hearings were held in this matter. The record shows that K. H., petitioner here, had been absent from school 104 of the 180 days of the 1977–1978 school year. He had a pattern of increasing absences since kindergarten. Expert witnesses, including a licensed psychologist, attributed his frequent absences to "school phobia" which was described as a "traumatic aversion to school". On March 30, 1978, his attorney moved the court to appoint a psychiatrist to examine K. H. and order the expenses of the examination be paid by the department. This petition was denied by Judge Robert N. Ledin. Judge Ledin later disqualified himself from the case and subsequent proceedings were held before Judge William E. Chase. The request for a

"118.15. **Compulsory school attendance** . . . 2 Any child who is excused by the school board because he is temporarily not in proper physical or mental condition to attend school or his educational program under s. 115.85(2), but who can be expected to return to his program upon termination of his illness or condition. The certificate of a reputable physician, reputable licensed psychologist or Christian Science practitioner living and residing in this state, who is listed in the Christian Science Journal, shall be sufficient proof of the physical or mental condition of the child and of the expectations for the child upon termination of his illness or condition. An excuse under this subdivision shall be in writing and shall state the time period for which it is valid not to exceed 30 days.

"3 Any child exempted for good cause by the school board of the district in which the child resides, except that good cause may not be based upon the child's exceptional educational needs as described in s. 115.76(3)."

[2] "48.12. **Jurisdiction over children alleged to be delinquent or in need of supervision.** The juvenile court has exclusive jurisdiction, except as provided in ss. 48.17 and 48.18 over any child: . . . (2) Who is alleged to be in need of supervision because: (a) He is habitually truant from school or home; or . . ."

psychiatric examination was not raised again before Judge Chase.

On August 24th, a final dispositional hearing was held during which Judge Chase stated that he was satisfied that K. H.'s condition came within the definition of "school phobia".

The trial court entered an order on August 30, 1978, transferring K. H.'s legal custody to the Bayfield County Department of Social Services. His physical custody remained with his parents.

On October 2, 1978, after additional absences and a further hearing, the court ordered the department to place K. H. in a foster home if he had "one more unexcused absence from school".

On October 11, 1978, K. H., brought an appeal from the orders entered on August 30 and October 2 to the Court of Appeals. He also moved the Court of Appeals to stay the execution of the challenged orders pending appeal. This motion was granted on November 14, 1978.

On October 16, 1978, the trial court entered an order continuing the appointment of Thomas R. Casper as K. H.'s attorney on appeal and ordering Bayfield County to reimburse Mr. Casper for his fees and costs of appeal. The order reserved jurisdiction to make further adjudications as to the indigency of K. H.'s parents for purposes of assessing attorney's fees and costs.

On appeal, K. H. challenged the sufficiency of the evidence underlying the trial court's orders transferring his custody to the department and directing placement in a foster home if K. H. had one more unexcused absence from school. He also alleged that both of the orders were an abuse of the court's discretion. K. H. alleged the trial court's denial of a psychiatric examination was also an abuse of discretion and a denial of due process. He asserted that "school phobia" was a legal excuse under secs. 118.15(1)(a) and 118.16(1), Stats. 1977, for re-

maining out of school, and that if it were not so held those statutes are in violation of the due process and equal protection clauses of the Wisconsin and United States Constitutions. The appeal also attacked the constitutionality of those statutes alleging that they are bills of attainder. Finally, the appeal challenged the order of the trial court reserving jurisdiction to make further adjudications concerning the indigency of K. H.'s parents.

On May 31, 1979, the Court of Appeals entered its decision. The court dismissed the appeal of the order reserving jurisdiction for further proceedings concerning the indigency of the parents because it was not a final order. The court affirmed the order of August 30, finding no abuse of the trial judge's discretion. All of the other arguments of K. H. were rejected except the challenge to the October 2nd order directing the department to place K. H. in a foster home if he had one more unexcused absence from school. While the record showed that K. H. had been absent, it was unclear whether his absences were "excused" because he was needed to work on his parent's farm since his father had become ill with a heart condition. The Court of Appeals found that order to be defective, holding that the meaning of "unexcused absence" could be made only by a court and not by the department. Accordingly, the Court of Appeals vacated the October 2nd order and remanded the matter to the trial court.

On July 29, 1979, a petition to review the Court of Appeals decision was filed with this court.

Because we conclude that this case is now moot, we express no opinion on the rationale used by the Court of Appeals in reaching its decision.

This court's longstanding definition of mootness was restated in *State ex rel. Ellenburg v. Gagnon,* 76 Wis.2d 532, 535, 251 N.W.2d 773 (1976). There the court stated that:

" 'A moot case has been defined as one which seeks to determine an abstract question which does not rest upon existing facts or rights, or which seeks a judgment in a pretended controversy when in reality there is none, or one which seeks a decision in advance about a right before it has actually been asserted or contested, or a judgment upon some matter which when rendered for any cause cannot have any practical legal effect upon the existing controversy.' "

K. H. reached the age of sixteen on September 4, 1979, and is therefore no longer subject to compulsory school attendance in Bayfield county.[3] The August 30, 1978 order of the trial court expired by its terms on August 24, 1979. The order of October 2, 1978, purporting to direct placement of K. H. in a foster home upon one further unexcused absence from school was vacated by the Court of Appeals. K. H. and his parents are no longer residing in Bayfield county.

No action taken by this court could have any practical legal effect upon this controversy. We therefore conclude that this case is moot and the review should be dismissed.

*By the Court.*—Review dismissed.

---

[3] "118.15. **Compulsory school attendance.** (1) (a) Unless the child has a legal excuse or has graduated from high school, any person having under control a child who is between the ages of 6 and 16 years shall cause such child to attend school regularly during the full period and hours, religious holidays excepted, that the public or private school in which such child should be enrolled is in session until the end of the school term, quarter or semester of the school year in which the child becomes 16 years of age."

Sec. 118.15(1)(b) pertaining to vocational school attendance would not apply in Bayfield county.